James Trembois, Appellant, v. Standard Railway Equipment Manufacturing Company, Appellee.

Gen. No. 44,489.

36

Opinion filed March 16, 1949.   Released for publication April 11, 1949.

JAMES TREMBOIS, *pro se.*

DEFREES, FISKE, O'BRIEN & THOMSON, of Chicago, for appellee; THOMAS J. JOHNSON, JR. and RICHARD J. NELSON, both of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

James Trembois filed a complaint in the circuit court of Cook county charging Standard Railway Equipment Manufacturing Company, a corporation, with slander.

Defendant answered the complaint. Thereafter plaintiff filed *en seriatim* first, second and third amended complaints. The record is silent as to what orders were entered with respect to the complaint and the first amended complaint. Defendant filed a motion to strike the second amended complaint. The court allowed this motion and gave plaintiff leave to file a third amended complaint. He filed a third amended complaint consisting of four counts. Defendant filed a motion to dismiss the third amended complaint. The court struck the third amended complaint and gave judgment for defendant. Plaintiff appeals.

It is an elementary rule of practice that a plaintiff waives all objections to the decision of the court in sustaining a motion to strike a complaint when he elects to abandon his complaint and file an amended complaint in its stead. (*People v. Opie,* 304 Ill. 521.) Plaintiff, of course, has a right to refer to a previous complaint in order to determine whether his action is vulnerable to attack under any statute or contract limiting the time within which the action may be brought. (See sec. 46, par. 170, ch. 110, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 104.046].) In his argument plaintiff alludes to the answer filed to the original complaint. In deciding the case we will not consider the answer, as the third amended complaint (except as to an attack under the statute of limitations) must stand or fall on the averments within its four corners.

For convenience, we will speak of the third amended complaint as the complaint. Paragraph I of the first count avers that in the State of Illinois and in other states, on and before the date thereinafter mentioned plaintiff was a person of good name and reputation, enjoyed the confidence of his friends and associates, and for several years immediately prior to the date mentioned was engaged in the industrial engineering profession, always maintaining a good personal and

professional reputation as a capable industrial engineer. Paragraph I of Counts II and III repeats this allegation, except that in Count II the State of Indiana is substituted for the State of Illinois, and in Count III the State of Pennsylvania is substituted for the State of Illinois. Paragraph I of Count IV realleges paragraph I of Count I. Paragraphs 2 and 3 of Count I allege that plaintiff had been employed by the defendant as a methods and standards engineer from on or about October 7, 1943 to on or about April 17, 1944, during all of which time his moral conduct toward all the women employed by the defendant was above reproach; that he felt and showed the highest respect for said women at all times; that his services for the defendant's business were always good and were considered excellent by the defendant; that his work attendance record with the defendant was exceptional, averaging about 65 hours per week; that all work attendance above 40 hours a week was performed voluntarily by him without seeking, expecting or receiving additional remuneration above his fixed monthly salary based on a 40 hour week; and this for the express purpose of furthering defendant's business and efforts in increasing the production of war and railway products; that he has never been mixed up in any rape charge; that he has never been ''in any way connected with any rape incident''; that he has never ''been arrested for jumping bond on any rape charge''; and that he has ''never threatened to bump off or to kill any women or girls.'' Counts II, III and IV reallege paragraphs 2 and 3 of Count I.

Paragraph 4 of Count I avers that on or about November 28, 1945, defendant knowing the premises, by A. G. Seeder, then acting within the scope of his authority as a duly authorized personnel agent of the defendant, maliciously and falsely spoke of and concerning the plaintiff to and in the hearing, by telephone, of George Moecker, then the personnel director of The

Buda Company of Harvey, Illinois, which company was then employer of plaintiff as an industrial engineer, the following false and defamatory words:

"James Trembois was mixed up in a rape charge. The police arrested him for jumping bond on the rape charge. He had considerable trouble with women. Numerous women called me up and complained of the methods he used to secure dates. I asked them to go before the sheriff and file a complaint, but because of the fear of being bumped off they would not sign. About six weeks ago a firm at York, Pennsylvania called me and informed me that Trembois had difficulties with all the girls in the company and had threatened to kill several girls if they would not go out with him. As the complaint from the girls to the management increased his attendance record was greatly affected."

Paragraph 5 of Count I alleges that "all said words spoken of and concerning the plaintiff were false, malicious and defamatory and thereby the plaintiff was injured to his reputation: To his damage $75,000."

Paragraph 4 of Count II avers that on or about February 7, 1946, the defendant knowing the premises, by L. J. Benson, then acting within the scope of his authority as a duly authorized personnel agent of the defendant, maliciously and falsely spoke of and concerning the plaintiff to and in the hearing, by telephone, of Howard Bamberg, then a duly authorized personnel agent of the Graver Tank & Manufacturing Company, Inc., of East Chicago, Indiana, with which company the plaintiff was then seeking employment as an industrial engineer, the following false and defamatory words:

"In January, 1944 the police came over and arrested James Trembois for supposedly jumping a bond in connection with rape. Also the Blaw Knox people informed us that Trembois disturbed all the girls at their

plant and threatened to kill some of the girls if they would not go out with him.''

Paragraphs 5, 6, 7 and 8 of Count II charge that as a natural consequence of defendant's action, by its agent, in speaking said malicious and defamatory words on said occasion falsely, the said words were believed, repeated and spoken on or about February 7, 1946 by William Shipman, acting as a duly authorized agent of the said Graver Tank & Manufacturing Co., Inc., to and in the hearing, by telephone, of R. L. Henderson, manager of the Wabash Employment Agency of Chicago; that as a natural consequence of defendant's action, by its agent, in speaking said malicious and defamatory words on said occasion falsely, the said words were believed, repeated and spoken on or about February 7, 1946, by said R. L. Henderson in the hearing and presence of Richard Malepka, an industrial engineer and friend of plaintiff; that as a natural consequence of defendant's action, by its said agent, in speaking said malicious and defamatory words on said occasion falsely, the said words were believed, repeated and published by said R. L. Henderson on divers occasions during the several weeks following on or about February 7, 1946, to divers employment managers of industrial concerns, the names of whom are unknown to plaintiff; and that all of the said words spoken of and concerning the plaintiff by the defendant, by its said agent, were false, malicious and defamatory, and thereby the plaintiff was injured to his reputation: ''To his damage $75,000.''

Paragraph 4 of Count III alleges that on October 15, 1945, the defendant knowing the premises, by A. G. Seeder then acting within the scope of his authority as a duly authorized personnel agent of the defendant, maliciously spoke of and concerning the plaintiff to and in the hearing, by telephone, of P. J. Handley,

then a duly authorized agent of the Special Naval Ordnance Plant of York, Pennsylvania, which plant had previously employed plaintiff as an industrial engineer, the following false and defamatory words:

"James Trembois was arrested at our plant for rape. He jumped his bond and was picked up by the police. He had considerable trouble with the girls at our plant but I couldn't get them to file a complaint with the sheriff for fear he would kill them. If you want any more information call Chief of Police Martinson of Hammond, Indiana, and he will give you all the information that you need."

Paragraphs 5 and 6 of Count III charge that as a natural consequence of defendant's action, by its said agent, in speaking said malicious and defamatory words on said occasion falsely, the said words were believed, repeated and spoken by said P. J. Handley in the presence and hearing of divers persons of York, Pennsylvania, including Donald Donivan, an industrial engineer and friend of the plaintiff, and to and in the hearing, by telephone, of divers persons of the city of York, Pennsylvania and other cities; and (6) that all of said words spoken of and concerning the plaintiff by the defendant, by its said agent, were false, malicious and defamatory and thereby the plaintiff was "injured to his reputation: To his damage $150,000."

Count IV, after realleging paragraphs 1, 2 and 3 of Count I, charges that on November 28, 1945, the defendant knowing the premises, by A. G. Seeder, acting within the scope of his authority as a duly authorized personnel agent of the defendant, maliciously and falsely spoke of and concerning the plaintiff to and in the hearing, by telephone, of R. A. McKibbens, then the assistant personnel director of The Buda Company of Harvey, Illinois, which company was then employer of plaintiff as an industrial engineer, the following false and defamatory words:

"James Trembois had considerable trouble with women. Numerous women called me up and complained of the methods he used to secure dates. I asked them to go before the sheriff and file a complaint, but because of the fear of being bumped off they would not sign (meaning that the plaintiff should have been imprisoned for the methods he used to secure dates with women, but that said women were afraid of signing a complaint against the plaintiff for fear the plaintiff would kill them). About six weeks ago a firm at York, Pennsylvania, called me and informed me that Trembois had difficulties with the women at that plant. His methods of demanding dates with these women or be bumped off (meaning plaintiff would kill said women if they would not go out with him) together with other types of discourtesies brought continuous complaints from the women to the management. As the complaints increased, his attendance record was greatly affected (meaning that plaintiff's work attendance record while employed became very poor)."

that the falsity of the quoted words was known by the defendant; that the words were uttered on said occasion as "confidential," intentionally, and for the express purpose that plaintiff not know of same, but be helpless to protect himself against the same; and that all of said quoted words spoken of and concerning the plaintiff were false, malicious and defamatory and thereby the plaintiff was injured in his reputation and incurred great mental suffering: "To his damage $25,000."

Plaintiff asserts that the words set out in each of the first three counts of the complaint are slanderous *per se* in that they impute that he was guilty of the infamous crime of rape and of moral turpitude, and in that they tend to hurt and are calculated to prejudice him in seeking his livelihood by his profession; that for the latter reason the words set out in the fourth

count are also slanderous *per se,* and that words spoken of an engineer which impair his credit in his profession are actionable *per se.* Both parties cite the case of *Pollard v. Lyon,* 91 U. S. 225. This is a leading case in the law of slander. After a scholarly discussion of the subject the court adopts the rule laid down in *Brooker v. Coffin,* 5 Johns. 188, 1 Am. Lead. Cas. (5th ed.) 98, where the New York court said: "In case the charge, if true, will subject the party charged to an indictment for a crime involving moral turpitude, or subject the party to an infamous punishment, then the words will be in themselves actionable." In the *Pollard* case the United States Supreme Court said (234):

"Formulas differing in phraseology have been prescribed by different courts; but the annotators of the American Leading Cases say that the Supreme Court of the State of New York in the case of *Brooker v. Coffin,* appear 'to have reached the true principle applicable to the subject;' and we are inclined to concur in that conclusion, it being understood that words falsely spoken of another may be actionable *per se* when they impute to the party a criminal offence for which that party may be indicted and punished, even though the offence is not technically denominated infamous, if the charge involves moral turpitude, and is such as will affect injuriously the social standing of the party."

The words complained of fall into two categories, namely, those that plaintiff claims impute the commission of a crime, and those that he claims prejudice him in his profession. As to the first classification, the words complained of state that plaintiff was "mixed up in a rape charge," that "the police arrested him for jumping bond on the rape charge," that "he was arrested for supposedly jumping a bond in connection with rape," that "he was arrested for rape," and "was picked up by the police." These words do

not impute the commission of the crime of rape or state that he is a rapist. Arrest is no evidence of guilt. A charge that he was arrested on a rape charge does not say that he is guilty of rape. The statement that three policemen from Hammond went to defendant's factory and stated that they were going to arrest plaintiff "in connection with jumping a bond in a rape charge" and that they did arrest him and remove him from defendant's premises, does not charge him with a crime. The words that fall into the second category do not give plaintiff a cause of action without the allegation of special damages, or the allegation that they were spoken of and injured him in his business or profession. There are no such allegations in the complaint. In the *Pollard* case the Supreme Court held that an allegation that plaintiff had been "damaged and injured in name and fame" was not a sufficient allegation of special damages. In *Parker v. Kirkland,* 298 Ill. App. 340, it was held that words that imply a threat are not actionable *per se.* Since the words complained of do not impute to plaintiff the commission of an offense punishable by imprisonment, and since there is no allegation that the words complained of were spoken of plaintiff in relation to his business or occupation and injured him in his business or occupation, or other allegation of special damages, the complaint was vulnerable to defendant's motion to strike.

Plaintiff urges that the motion to strike on the ground that the words could not have been spoken by the defendant and if spoken were the words of A. G. Seeder, for which defendant is not responsible, and on the further ground that it is apparent that the alleged slanderous statements were privileged, is contradictory. In a motion to strike a defendant has a right to attack a pleading in any respect which it is vulnerable even though there may be inconsistencies in the points urged.

■ Any remarks of the trial court were not conclusive of the issues. What we are called upon to decide is whether the judgment entered was proper. In our opinion it was proper. *See People v. McFadden,* 280 Ill. App. 433; and *Wright v. Federal Wrecking Co.,* 331 Ill. App. 231. It is unnecessary to discuss other points that have been urged. For the reasons stated the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

Kiley and Lewe, JJ., concur.