HARRY L. ERICKSON, Plaintiff-Appellant, *v.* EDWARD WALSH *et al.,* Defendants-Appellees.

(No. 72-126; ▉▉▉▉▉▉)

Third District—April 30, 1973.

Louis E. Olivero, of Peru, for appellant.

Andrew O'Connor and Ernest Pool, Jr., both of Ottawa, for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

Plaintiff Harry L. Erickson appeals to this court from judgments of the Circuit Court of La Salle County entered (1) on a directed verdict in favor of defendant F. W. Lewis and (2) as a result of a jury verdict in favor of defendant Edward Walsh, in the Circuit Court of La Salle County. Plaintiff Harry L. Erickson had filed a two-count complaint in

the Circuit Court of La Salle County in which he sought recovery for personal injuries sustained by him as a result of an automobile accident. Defendant Edward Walsh, the driver of the car in which plaintiff was riding, and F. W. Lewis, the operator of the other automobile involved in the incident, were joined as defendants. At the close of evidence for the plaintiff, the trial court directed a verdict as to Count II of the complaint in favor of defendant Lewis. Thereafter, when the jury returned the verdict of not guilty as to defendant Walsh on Count I of the complaint, the trial court entered judgment in favor of defendant Walsh as to such count. Defendant F. W. Lewis also prosecutes a cross-appeal in this court in which he contends that the trial court erred in denying his motion for recovery of expenses from plaintiff incurred by defendant Lewis as a result of the litigation.

The record discloses that early in the afternoon on Sunday, August 28, 1966, the day of the accident, defendant Walsh and a friend, Vaughn Williamson, the brother-in-law of plaintiff, left the Walsh home near Ottawa, Illinois, and traveled in the 1965 Pontiac Convertible owned by Walsh, to Leo White's tavern near Wedron, Illinois. At the tavern they met another friend, Fred Carlson, and also (according to the plaintiff) defendant Walsh testified that the four people then left the tavern and traveled to plaintiff's home so that plaintiff could advise his wife that he was going along for a ride. According to the plaintiff and Williamson, plaintiff did not appear at Leo White's tavern at all but rather the three others went in defendant Walsh's car to plaintiff's home to ask him to go for a ride. It was stated that defendant Walsh wanted to look at a truck which had been advertised in the paper. Irrespective of where the initial meeting with plaintiff took place, it does not appear that such meeting was by mutual prior arrangement.

It is clear, in any event, that the group left plaintiff's home shortly after their arrival there in defendant Walsh's automobile with defendant Walsh driving. They drove toward Marseilles, Illinois, to a residence, where defendant Walsh talked to his job superintendent about the location of the work which defendant Walsh was to do the next day. After a brief time was spent at the superintendent's residence, the parties then drove into Marseilles and stopped at a tavern. Shortly thereafter they drove to Seneca, Illinois, to look at the truck. Walsh discussed the merits of the truck with the others and decided against purchasing it. The group then left Seneca, traveling in a westerly direction along Route 6 toward Ottawa. The top of the convertible was down as the party was driving along Route 6. Defendant Walsh was driving, Williamson was in the right front seat, Carlson was in the right rear seat, and the plaintiff

was in the left rear seat. It was during this portion of the journey that the accident occurred. The day was bright, warm, and clear, and the pavement was dry.

There was some confusion as to the exact location of the accident. Williamson and defendant Walsh placed the accident at some distance west of the Material Service Corporation underpass. Defendant Lewis and the other occupant of his car, who subsequently became his wife, stated that the accident occurred at a point east of the underpass. As a result of the accident plaintiff's right hand was severely mangled and a portion of the hand was later amputated.

Prior to the accident there were some cucumbers in defendant Walsh's automobile which had been there since the day before the accident. Some members of the group were engaging in a bit of horseplay or amusement with the cucumbers. At least one cucumber was thrown at a road sign by Fred Carlson and another was thrown out of the automobile by plaintiff. According to the testimony of plaintiff, at a point when defendant Walsh was pulling out to pass an automobile in front of him, plaintiff stood up and reached over the "front seat" for a cucumber. He recalls that immediately thereafter, he lost his balance, threw up his arms and fell over to his left. He remembers nothing further about the occurrence. Williamson stated that immediately prior to the occurrence, defendant Walsh had pulled out to pass the automobile ahead of them while they were in a "no passing zone". There was an oncoming car (that of defendant Lewis) and defendant Walsh, accordingly, started to move back into his own lane. Williamson looked into the back seat and saw that plaintiff had severely injured his right hand. Defendant Walsh states that at no time after he had traversed the underpass did he cross the center line in an attempt to pass another vehicle. He did not see plaintiff sustain his injury, but was told about it by Carlson. The Walsh car was traveling at about 50 to 60 miles per hour immediately prior to the accident.

Defendant Lewis testified that he was driving his car easterly along Route 6 and that he saw the Walsh car approaching him. He saw someone in the back seat stand up and "dive" toward his left and that a few seconds later as he passed the Walsh car he heard a "thump" caused by plaintiff's hand striking the left headlight of the Lewis car. He afterwards observed that his left headlight was smashed. Lewis testified that he was traveling within the speed limit at about 50 to 55 miles per hour and that at no time was his car in the westbound lane. None of the other witnesses who testified indicated in any manner that the Lewis vehicle was at any time outside of the eastbound lane of traffic. The testimony which was presented in the case corroborated that of defendant Lewis in

this respect. Defendant Lewis also stated that he did not see the Walsh car attempting to pass any of the vehicles in front of him. Fred Carlson did not testify at the trial.

■■ It is first contended by plaintiff that the trial court erred in directing a verdict for defendant Lewis. Plaintiff bases this argument on the assertion that although plaintiff and the witness Williamson testified that defendant Walsh crossed the center line, defendant Walsh said that he did not, and it follows (according to plaintiff) that the jury could have disbelieved his testimony and that of Williamson and believed that of defendant Walsh. Thus, it is contended by plaintiff that there was circumstantial evidence that the accident could not have occurred unless the Lewis vehicle crossed the center line. The evidence in the record, however, does not support plaintiff's argument in this respect. The evidence presented at the trial when taken in its aspect most favorable to plaintiff, so overwhelmingly favors defendant Lewis that a verdict against him on the record could never stand. (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504.) It is obvious that the accident could have occurred even if neither of the cars had crossed the center line. On the basis of the evidence presented in the case it could well have been concluded that plaintiff's arm and upper body could have extended laterally from defendant Walsh's car and over the center line of the highway so as to allow plaintiff's hand to be struck by defendant Lewis's left headlight while both automobiles were entirely within their proper lanes of travel. Significantly, an evaluation of all of plaintiff's testimony, together with an appraisal thereof in the light of the testimony of the other witnesses called during plaintiff's case (see *Carter v. Winter*, 32 Ill.2d 275, 204 N.E.2d 755, 759), manifest a signal failure to controvert the clear and unequivocal testimony of defendant Lewis given when called as a witness under section 60 of the Civil Practice Act, when he asserted that his automobile was fully in the eastbound lane at all relevant times. Since this was corroborated by everyone who testified as to the position of Lewis's car, the trial court was bound under the *Pedrick* rule to direct a verdict in favor of defendant Lewis under the facts as shown by the record.

Plaintiff next contends that his motions for leave to file successive amended complaints were erroneously denied by the trial court. From the record we note that on August 13, 1971, plaintiff filed a motion for leave to file an amended complaint, stating that newly discovered evidence had disclosed that plaintiff was not a guest passenger in defendant Walsh's vehicle, as originally alleged, but rather was merely a passenger therein, the automobile trip in question being "primarily" for the purpose of defendant Walsh. (See *Sinclair v. Thomas*, 90 Ill.App.2d 114,

119-120, 234 N.E.2d 368, 371.) Plaintiff sought to file an amended complaint, therefore, averring that he was a "passenger" in defendant Walsh's car and charging defendant Walsh with ordinary negligence instead of willful and wanton misconduct. Willful and wanton misconduct is required to be shown if plaintiff had been only a guest in the Walsh vehicle. (Ill. Rev. Stat. 1969, ch. 95½, sec. 9—201.) A proposed two-count amended complaint was attached to the motion and following the hearing on the motion, the court entered an order denying such motion. Plaintiff thereupon orally moved for leave to file a proposed two-count second amended complaint. This proposed second amended complaint sought not only to charge defendant Walsh with liability for ordinary negligence as did the proposed first amended complaint, but, also, as part of such charge, set forth a "comparative negligence" theory of recovery as against both defendants. The trial court denied leave to file the proposed second amended complaint.

By electing to ask leave to file the second amended complaint, upon the trial court's denial of leave to file the first amended complaint, plaintiff abandoned the first amended complaint and thus waived any contentions of error concerning the trial court's ruling thereon. (*Villareal v. Trevino,* 30 Ill.App.2d 77, 173 N.E.2d 582; *Trembois v. Standard Ry. Equipment Mfg. Co.,* 337 Ill.App. 35, 84 N.E.2d 862.) The only question, therefore, remaining before us concerning the pleadings is whether the trial court's order denying plaintiff's oral motion for leave to file the second amended complaint was proper. We have noted that such pleadings sought to aver causes of action under a comparative negligence theory. If that theory is not viable in Illinois, the trial court's order on the pleadings must be sustained, in view of the nature of the pleadings presented.

On the issue as to whether Illinois should judicially adopt a comparative negligence doctrine in cases such as we are confronted with in the instant case, plaintiff has set forth a cogent and well-reasoned argument in his brief. The particular issues involved, however, have been fully considered by our Supreme Court as recently as 1968 in the well-known case of *Maki v. Frelk,* 40 Ill.2d 193, 239 N.E.2d 445. In that case, the Supreme Court, as the highest tribunal in this State, specifically held that proper respect for the principle of *stare decisis* compelled a ruling that if comparative negligence concepts were to become the law of Illinois and the long settled rule that plaintiff's contributory negligence absolutely bars him from recovery in a common law negligence action is to be abrogated, that change in the law must be accomplished by the legislature.

■■ Irrespective of what our personal analysis or predilections may be with respect to the desirability of the comparative negligence doctrine in the State of Illinois, we feel that, primarily by reason of the fact that the *Maki v. Frelk* case was decided so recently, we are required to follow that determination. If a change is to be made, judicially, in such doctrine, that change should be initiated by the Supreme Court in view of its recent pronouncement in *Maki v. Frelk*. The issue may be presented to the Supreme Court on appeal from this court if appellant is so inclined. As a consequence of this situation, and in view of *Maki v. Frelk*, 40 Ill.2d 193, 239 N.E.2d 445, we conclude that the proposed second amended complaint which seeks recovery under comparative negligence theory does not now state a cause of action under the rules of Illinois negligence law. We, therefore, conclude that we have no alternative but to uphold the order of the trial court which denied plaintiff's leave to file such second amended complaint. The resolution of questions relating to the proposed first and second amended complaints necessarily resolves all questions dealing with the proposed instructions thereon and accordingly we need not discuss plaintiff's further contention of error relating to instructions.

A final question with which we must deal involves defendant Lewis' cross-appeal from the trial court order denying his motion to tax his costs against plaintiff for the "expenses" of defendant Lewis, excluding attorney's fees, incurred in defense of the action. These expenses are stated to be $352 and represent wages lost by defendant Lewis in presenting himself in court and at the taking of a deposition. The Lewis motion was filed under the provisions of section 41 of the Civil Practice Act. (Ill. Rev. Stat. 1971, ch. 110, sec. 41.) This section purports to penalize litigants who plead false or frivolous matters or bring lawsuits without any basis in law.

■■ Although we recognize that defendant Lewis was properly awarded a directed verdict at the close of plaintiff's case, that circumstance alone does not establish that plaintiff's action against defendant Lewis was baseless. Experience teaches us that it is extremely difficult to predict what witnesses will say when called upon to testify even if their depositions have been taken prior to trial. The question of interpretation of testimony is also an uncertain factor which cannot be determined arbitrarily. If we were to overrule the trial court's action on the Lewis motion for expenses in this case, it would substantially establish a precedent that litigants in whose favor directed verdicts are properly entered at the close of the opponent's case may properly charge such opponent with their litigation expenses. This would be an unsound rule and is not

a proper interpretation of the statute (sec. 41) referred to. We, also, see no basis for applying it in the instant case. We, therefore, find no error in the trial court's ruling on the motion for assessment of expenses.

For the reasons stated, the judgment of the Circuit Court of La Salle County is hereby affirmed.

Judgment affirmed.

STOUDER and SCOTT, JJ., concur.