SEID COURI, d/b/a Koliseum, Plaintiff-Appellee, v. THE HOME INSURANCE COMPANY, et al., Defendants-Appellants.—(THE HOME INSURANCE COMPANY, Third-Party Plaintiff-Appellant, v. RON PACIONE INSURANCE AGENCY, INC., Third-Party Defendant-Appellee.)

Third District   No. 76-141

Opinion filed October 6, 1977.—Rehearing denied November 14, 1977.

Heyl, Royster, Voelker & Allen, of Peoria, for appellants The Home Insurance Company and Heritage Fire Insurance Company of America.

Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellant Cincinnati Insurance Company.

Moehle, Reardon, Smith & Day, of East Peoria, for appellee Seid Couri.

Kavanagh, Scully, Sudow, White & Frederick, of Peoria, for appellee Ron Pacione Insurance Agency, Inc.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This appeal is from the judgment of the circuit court of Tazewell County rendered on the verdict in favor of plaintiff, Seid Couri, d/b/a Koliseum, against defendants, Home Insurance Company, Cincinnati Insurance Company and Heritage Fire Insurance Company of America and from the directed verdict in favor of third-party defendant, Ron Pacione Insurance Agency, against third-party plaintiff, Home Insurance Company.

Plaintiff brought this action to recover benefits under three policies of insurance covering damage by windstorm. Home Insurance Company filed a third-party action against its insurance agent, Ron Pacione.

Some time on the morning of June 21, 1974, the Koliseum Nightclub sustained damage when a tree and other debris struck the building. Plaintiff was the named insured on the three policies of property damage insurance issued by the three defendants which were sold to plaintiff at various times by the Ron Pacione Insurance Agency. The three companies refused to pay the loss and defended on the basis that plaintiff had not shown a direct loss caused by windstorm. In addition, two of the defendants, Home Insurance Company and Cincinnati Insurance Company, each asserted the affirmative defense that their policies had been effectively cancelled by notices of cancellation mailed prior to the loss. Defendant Home Insurance Company brought a third-party action against Pacione on the ground Pacione had, without authority, continued to bill plaintiff for the second- and third-year policy premiums after being advised by Home Insurance Company the policy had been cancelled in the first year.

The face values of the policies issued by the defendants were: Home Insurance Company, $20,000; Cincinnati Insurance Company, $25,000; and Heritage Fire Insurance Company of America, $50,000. The jury was instructed that the sum of the three policies as initially issued was $95,000 and was asked to determine the actual cash value of plaintiff's building and the costs of repairs to the structure. The jury found the actual cash value to be $155,000, the costs of repairs $80,000, and due to an 80 percent co-insurance clause, entered a verdict of $61,000.

The first issue in this cause is whether there was sufficient evidence to allow the jury to conclude the damage to plaintiff's building was a direct loss caused by windstorm. The complaint alleges plaintiff's building suffered damage when a tree fell against it during a windstorm. There was

no eyewitness testimony regarding the occurrence of the damage or how the tree came to rest against the building. Evidence relating to the size of the tree ranged from a minimum estimate that the tree trunk was 8 to 10 inches in diameter to a maximum estimate of 24 to 36 inches. The length of the tree was placed between 20 and 23 feet and the weight estimated to be about 1 ton. The building in question was located on a large flat surface adjacent to a drainage ditch about 15 feet wide and from 4 to 10 feet deep which surrounded the base of a cliff. The distance between the base and the building was about 40 feet. The basic factual dispute is whether there was a wind of sufficient strength and force to project the tree against the building. Defendants' main argument is that the wind did not reach such strength or force and that plaintiff must rely on circumstantial evidence to establish both the windstorm and that the damage incurred was caused by the windstorm.

The evidence shows the tree was found virtually upside down with its roots sticking above the 12-foot-high roof of plaintiff's building with large clumps of dirt on its roots. It was found about 40 feet from the base of the cliff from which plaintiff contends the tree came. An argument was apparently made by defendant that the damage could have been caused by a mudslide. However, if the tree had come from the cliff it would have had to go through the 15-foot-wide drainage ditch which surrounded the base of the cliff. There was testimony the ditch was about 4 to 10 feet in depth and surrounded by a mound of dirt about 4 feet high from the top of the ditch. There is evidence the drainage ditch was not found filled with mud after the loss occurred. Furthermore, there was testimony from persons who observed the site immediately after the loss that there were no indications of a mudslide at the site.

The main testimony regarding the presence of a windstorm at or about the time of the loss was plaintiff's testimony he experienced high winds at the time he left the building at about 4:45 a.m. on the morning of the occurrence and the testimony of a meteorological technician with the National Weather Service Office at the Greater Peoria Airport, which is about 7 or 8 miles from plaintiff's building. This technician testified the highest wind speed recorded on June 21, 1974, was a gust measuring 28 miles per hour at 2:30 a.m. The next highest wind gust recorded on that date at the airport was 26 miles per hour at 10:21 a.m. He testified a 28-mile-per-hour wind would probably cause some distraction in driving and might be enough to break small limbs from trees.

■■ Defendant cites *Friedman v. Employers' Fire Insurance Co.*, 336 Ill. App. 140, 83 N.E.2d 40, for the proposition that in order to establish damage as a direct loss caused by windstorm, there must be evidence both that wind of sufficient velocity and force to do the damage alleged prevailed in the vicinity of the damaged property during the time the

damage is alleged to have occurred, and that the wind caused the damage alleged. The *Friedman* rule is a correct statement of the law, but the case itself is factually distinguishable in that the skylight alleged to have been damaged in the *Friedman* case was already in disrepair and was located on the roof of a 2-story building surrounded by several 5- to 10-story buildings which conceivably could have insulated the building from winds of the type in evidence in the case. There the evidence showed a maximum sustained 5-minute wind of 24 miles per hour and a maximum gust of 31 miles per hour recorded 8 miles from the location of the damage. There as here, there was no testimony concerning wind speed in the immediate vicinity of the damaged building.

■■ According to *Danielson v. St. Paul Fire & Marine Insurance Co.*, 256 Minn. 283, 98 N.W.2d 72 (1959), and *Jay Bee Warehouse Co. v. American Eagle Fire Insurance Co.*, 270 F.2d 883 (7th Cir. 1959), a trier of fact is not limited to the consideration of the wind speed at the precise time of the loss. In these two cases damage was caused on comparatively calm days. However, on prior days there was evidence of considerable winds. In the instant case there is no specific evidence of a windstorm at the precise time of the damage, however, there is evidence of 63-mile-per-hour winds on the day preceding and 56-mile-per-hour winds on the day following. We believe, in light of evidence of high winds at the general time of the damage in question, of some high winds on the days immediately preceding and following and the absence of a reasonable explanation for a tree being completely uprooted, the jury could have reasonably concluded the damage in question was caused by a windstorm.

■■ The second issue is whether the court committed error in permitting plaintiff's counsel's statements during closing argument regarding the replacement costs of plaintiff's building. Defendants argue plaintiff's counsel's statement during closing argument to the effect that the replacement cost of the building was $165,000 on the day of the loss was a misrepresentation in that it did not take into consideration the manner in which the interior of the building was finished at the time of the loss. Part of the dispute in this case is related to the replacement and actual cash value of the building. The three policies of insurance contained co-insurance provisions which necessitate the determination of the actual cash value of the building to compute the total amount of insurance coverage the plaintiff was obligated to maintain to avoid becoming a co-insurer on the property. Accordingly, in this instance the insured would prefer the actual cash value to be lower and the insurers would prefer the figure to be higher.

An examination of the record reveals plaintiff's witness did testify as to a $165,000 replacement cost for plaintiff's building. Defendants' witnesses

testified as to a much higher replacement cost for the building. The jury chose to use neither plaintiff's lower figure nor defendants' higher figures. Since there was in fact some evidentiary basis in the record for plaintiff's counsel's statement during closing argument, and in light of the manner in which counsel presented that portion of his argument, we hold no error was committed.

Since no issue is raised by defendant Heritage Fire Insurance Company of America regarding any alleged cancellation of its policy, the resolution of the above two issues is dispositive as to any issues related to the judgment against it.

Although several issues are raised regarding the alleged cancellation of plaintiff's policies by defendants, Home Insurance Company and Cincinnati Insurance Company, due to the view we take of this cause the only issue we need deal with here is whether under the applicable statutes, it would have been necessary for defendants to use certified or registered mail to cancel their policies of fire and extended coverage. Both companies claim they issued notice of cancellation less than one year after the polices were issued. Defendant Home Insurance Company presented evidence a notice of cancellation was mailed to plaintiff at his home address, postage prepaid. While defendant Cincinnati Insurance Company was proving up its notice of cancellation, plaintiff's attorney objected to the admissibility of this notice for, among other reasons, the notice was not sent via certified or registered mail. The court ruled as a matter of law the notices were ineffective and ordered the notices of cancellation removed from evidence. The basis of the court's ruling is section 143.6 of the Illinois Insurance Code (Ill. Rev. Stat. 1973, ch. 73, par. 755.6) which provided as follows: "Proof of mailing of notice of cancellation or of intention not to renew to the named insured at the address shown in the policy shall be by registered or certified mail and such is sufficient proof of notice."

Defendants contend section 143.6 is applicable only to automobile policies. They concede the section is not so expressly limited on its face, but argue that when the section is read in the context of the entire insurance code, the only logical inference is that it relates only to automobile policies. We do not agree.

■■ An examination of the provisions of the 1973 Insurance Code is pertinent to our discussion. Article IX, encompassing sections 132 through section 155.17 is entitled "Provisions Applicable to all Companies." Section 143, entitled "Policy Forms," is divided into (1) life, accident and health and (2) casualty, fire and marine. Section 143.1 entitled "Expiration and Cancellation Provisions," specifically excludes life, accident, health, and ocean marine policies from the requirement of including in their policies a cancellation provision setting out the manner in which such

policies may be cancelled. Section 143.1a, entitled "Policy in Effect for One Year-Cancellations," refers specifically only to fire and extended coverage insurance business. Section 143.1b entitled "Notice of Cancellation-Time for Giving-Proof of Notice" refers to policies to which section 143.1a applies. Section 143.1c refers to section 143.1a which, as we have already noted, refers to fire and extended coverage insurance. Section 143.1d refers to sections 143.1a thru 143.1c which applies as noted above. Section 143.2 contains definitions of terms used in section 143.2 thru section 143.8. Section 143.2(a) refers specifically to policy of automobile liability insurance. Section 143.2(b) defines "renewal" but does not refer to any particular type of policy. Section 143.2(c) refers to payment of premium and does refer specifically to automobile liability insurance. Section 143.3 specifically refers to automobile liability insurance only. Section 143.4 refers to policies to which section 143.3 applies and as noted above, this was only automobile liability insurance policies. Section 143.5 specifically refers to notice of intention not to renew automobile policies. Section 143.6 entitled "Proof of Mailing of Notice" refers specifically to no particular type of policy. Section 143.7 refers specifically to automobile policies. Section 143.9 entitled "Liability of Company or Agents Regarding Statements Made and Notices or Information" does not refer to any particular type of policy. Section 143.10 entitled "Cancellation of Policies-Hearing" also does not refer to any particular type of policy.

■■■ Defendant's main argument is that section 143.6 applies only to automobile policies since it was placed among statutes applying only to automobile policies. However, we note again that section 143.6 is silent as to the type of policies to which it applies. Furthermore, section 143.2, which contains definitions, is prefaced by the statement that the following terms are only as used in section 143.2 thru 143.8. The first definition given is that of a policy of automobile liability insurance. No such reference was made in section 143.6. We also note that section 143.6 is unique in that it is the only section between section 143.1 thru 143.10 which defines the term proof of mailing of notice. In section 143.1b, concerning fire and extended coverage insurance, reference is made to proof of mailing of notice. The only language defining such term is contained in section 143.6. If section 143.6 referred only to automobile liability insurance, the term "proof of mailing of notice" as used in section 143.1b would be ambiguous. As a matter of legislative construction, we believe section 143.6 is not limited only to automobile insurance policies, but on the contrary, includes property insurance. Accordingly, the trial court did not err in refusing to admit into evidence copies of the cancellation notices allegedly sent to plaintiff by defendants Home Insurance and Cincinnati Insurance. When, as in this case, cancellation depends on notice by mail and the notice does

not comply with the statute, the notice of cancellation is ineffective and the policy remains in force.

The next issue on this appeal is whether the trial court erred in directing a verdict in favor of third-party defendant, Ron Pacione, at the close of the insurance company's evidence. It is undisputed an agent is liable for any injury to his principal caused by his failure to follow his principal's instructions. (1 Ill. L. & Prac. *Agency* §55 (1953).) Whether or not the trial court's directed verdict was proper must be judged by reference to the *Pedrick* rule (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 229 N.E.2d 504).

■■ Home Insurance Company filed a third-party claim against its agent, Ron Pacione, seeking damages for a violation of the agent's duty. Their policy had been issued on November 21, 1971, and had an expiration date of November 21, 1974. The arrangement Home Insurance Company had with its agent was that they would bill the agent and the agent would in turn bill the insured. Plaintiff was not billed directly by the insurance company, but was billed by Pacione. Home Insurance Company's cancellation clerk testified she had mailed notice of cancellation to Pacione on November 19, 1972, and that the effective date of cancellation was listed as September 30, 1972. Pacione denied receiving this notice of cancellation, but did admit receiving a statement of account from Home which indicated plaintiff's policy contained a Code 33. Home claims the statement of account indicates cancellation. The record reveals that this code can refer to transactions besides policy cancellations, such as reductions in coverage or amending endorsements. Pacione testified he could not determine whether the policy had been cancelled solely by referring to this accounting statement. The cancellation provision of the policy stated that the company could cancel at any time upon five days written notice with or without tender of the excess of paid premium. The supervisor in charge of cancellations for Home Insurance Company testified there is nothing for the agent to do in order to make the company-initiated cancellations effective. As we have noted above, the cancellation attempt, if any, by Home Insurance Company was ineffective. Likewise we believe the evidence was insufficient as a matter of law that the agent violated his duty to the company. See *Harvey v. General Guaranty Insurance Co.*, 201 So. 2d 689, (La. App. 1967).

A final question to be resolved involves the Ron Pacione Insurance Agency's cross-appeal from the trial court's denial of its motion for attorney's fees under section 41 of the Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 41.) Since the motion for attorney's fees was filed September 15, 1975, we must examine the merits of the issue under

section 41 as it existed prior to its amendment on August 20, 1976, effective September 19, 1976 (see 1976 Ill. Laws 1349, 1358, §8).

■■■ The burden of proof in a motion based on section 41 is on the movant. (*Grandys v. Spring Soft Water Conditioning Co.*, 101 Ill. App. 2d 225, 242 N.E.2d 454.) Before attorney's fees may be awarded, the movant must prove that the allegations against him, (1) were made without reasonable cause, (2) were not in good faith, and (3) were untrue. (*Murczek v. Powers Label Co.*, 31 Ill. App. 3d 939, 335 N.E.2d 172.) Upon examining the record, we cannot say that the third-party action by Home Insurance against the Ron Pacione Insurance Agency was not instituted in good faith. Information available to Home Insurance at the time the action was instituted indicated that Pacione might be wholly or partially responsible for the failure of the policy to be cancelled. While testimony and evidence adduced at trial would thereafter indicate otherwise, the issue of good faith must be determined by the information available to or discoverable by Home Insurance at the time the action was commenced. The mere fact that Pacione was entitled to and awarded a directed verdict does not establish that Home Insurance Company's third-party action was baseless. (*Erickson v. Walsh*, 11 Ill. App. 3d 99, 296 N.E.2d 36.) Accordingly, we hold that the trial court did not err in denying Pacione's motion for attorney's fees.

For the foregoing reasons the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

STENGEL, P. J., and SCOTT, J., concur.