*In re* PAULA EATHERTON, a Minor—(The People of the State of Illinois, Petitioner-Appellant, *v.* Paula Eatherton, Respondent-Appellee (Melvin Eatherton, Appellee)).

Fifth District   No. 82—733

Opinion filed November 9, 1983.

K. Rick Keller, State's Attorney, of Effingham (Stephen E. Norris and Debra A. Buchman, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Steven P. Seymour, of Effingham, for appellee.

JUSTICE KARNS delivered the opinion of the court:

The State of Illinois appeals from the judgment of the circuit court of Effingham County assessing $1,100 in attorney fees against

the Department of Children and Family Services in favor of the father of a child made a ward of the State. The fees were awarded under the provisions of section 41 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 41), now section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—611).

The Department of Children and Family Services (DCFS) sought to remove a 15-year-old girl from her father's home. She had chosen to live with her father, although the mother had legal custody. On February 19, 1981, the girl made a voluntary statement to the police accusing her father of sexual abuse. The "Petition for Adjudication of Wardship" filed on February 20, 1981, described the girl as "neglected or dependent" because her "[e]nvironment is injurous [sic] to the child's welfare in that the father is sexually abusing said child." At a hearing on February 20, 1981, the girl repeated under oath her accusations against her father, saying that he had forced her into intercourse three days before. When asked if he wished to question her, the father said only, "All I want is to put an end to it." He was not then represented by counsel. Having been admonished by the court as to the seriousness of the allegations and his right to say nothing more, the father remained silent. The court found probable cause that the girl was "neglected and dependent" and that it was necessary for her to be placed temporarily in the State's care.

On March 18, 1981, the father retained counsel and the next day his attorney was granted a continuance to undertake discovery in view of the seriousness of the charges. Discovery raised significant questions about the girl's credibility. Her mother indicated that DCFS had known in 1978 of one incident in which the girl had accused her father of sexual abuse but had later said the accusation was "a joke."

Responding to the State's original petition, the father denied that he had ever had sexual relations with his daughter or that her environment was injurious to her. He admitted that she was "beyond the control of her parents and *** in need of supervision, pursuant to Chapter 37, §702—3 of the Illinois Revised Statutes." On June 17, 1981, at the hearing on final adjudication of wardship, the parties agreed to an amended petition which omitted the reference to sexual abuse. The father's attorney voiced no objection to this emendation. He expressed to the court his client's wish to reserve his right to see the girl in public but not to be alone with her "because of the original allegations." The court adopted the terms of the amended petition in its placement order of June 17, 1981. Both parents were permitted monitored visits with their daughter. No further trial of the sexual abuse issue was made.

On July 17, 1981, the father asked the court to assess $1,100 in attorney fees against the DCFS for his expenses in defending against the allegations of sexual abuse. Citing to depositions of the girl and her mother made in June 1981 and affidavits signed by the State's witnesses in June and July of 1981, the father argued that the DCFS had reason to question the girl's credibility and therefore had a duty to investigate before bringing the charge of sexual abuse against him. On the basis of these allegations about the State's case, he argued that the charge had been found "untrue upon proper investigation" and had been "made without reasonable cause." At the continuation of the hearing on the motion on January 6, 1982, the girl's guardian *ad litem* testified that although he knew of false accusations made by her against other men, he believed her accusations against her father could have been substantiated. He viewed the negotiations prior to the striking of the reference to sexual abuse from the petition as an effort to prevent the emotional strain of trying the issue in open court. As guardian *ad litem*, he felt the welfare of the child was his primary concern.

On September 22, 1982, the court ordered DCFS to pay $1,100 in attorney fees because "reasonable care and proper investigation would have revealed a history of similar unreliability on the part of the accuser here *** prior to the charges being filed." In a minute entry on the court record sheet, the court stated that the deposition testimony supported his finding.

The only question is whether the trial court abused its discretion under section 41 of the Civil Practice Act in assessing the father's attorney fees against DCFS.

Section 41 provided that:

"Allegations *** made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal.

The State of Illinois or any agency thereof shall be subject to the provisions of this Section in the same manner as any other party." Ill. Rev. Stat. 1981, ch. 110, par. 41.

This statutory provision was intended to discourage frivolous lawsuits by penalizing those who act unreasonably in making allegations later shown to be untrue. (*King v. King* (1978), 57 Ill. App. 3d 423, 373 N.E.2d 313; *Ready v. Ready* (1961), 33 Ill. App. 2d 145, 178 N.E.2d 650.) Because of its penal nature, the statute must be strictly

construed. (*Grover v. Commonwealth Plaza Condominium Association* (1979), 76 Ill. App. 3d 500, 394 N.E.2d 1273.) Each of its requirements must be proved (*Dulin, Thienpont, Potthast & Snyder, Ltd. v. Packaging Personified, Inc.* (1980), 89 Ill. App. 3d 647, 411 N.E.2d 1173), and the burden of proof is on the party seeking the remedy offered by section 41. *Williams v. City of Chicago* (1977), 54 Ill. App. 3d 974, 370 N.E.2d 119; *Murczek v. Powers Label Co.* (1975), 31 Ill. App. 3d 939, 335 N.E.2d 172.

■ ■ The assessment of fees under this section is discretionary with the court, and absent clear abuse of the court's discretion, the award of attorney fees will not be reversed. (*DeGraff v. Kaplan* (1982), 109 Ill. App. 3d 711, 440 N.E.2d 930.) But the court may exercise its discretion to award fees only when the record discloses both that the allegations are untrue and not put forward in good faith. (*Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 383 N.E.2d 185; *Village of Evergreen Park v. Spangler* (1976), 40 Ill. App. 3d 947, 353 N.E.2d 257.) Findings "that the facts pleaded by the plaintiff were untrue, or that the plaintiff *** knew them to be untrue *** are requisite to relief under Section 41." (*Greengard v. Cooper* (1966), 78 Ill. App. 2d 86, 89-90, 221 N.E.2d 775, 777.) In determining whether the plaintiff had reasonable cause, the court must consider what information was available or discoverable at the time the action was initiated. (*Couri v. Home Insurance Co.* (1977), 53 Ill. App. 3d 593, 368 N.E.2d 1029.) "The facts and circumstances disclosed, motive, intent or purpose may *** be material in determining whether allegations are made upon reasonable cause." *In re Estate of Knutson* (1980), 83 Ill. App. 3d 907, 912, 404 N.E.2d 1003, 1006.

■ The accused father had the burden of proving to the trial court that the allegations of sexual abuse had been found untrue. He has denied the truth of the allegation. He has created doubt concerning his daughter's truthfulness. But he has pointed to no evidence or argument that established the allegation as untrue. At the first hearing on the removal of the child from his home, he chose not to question her account of threats made to force her into intercourse with him. After obtaining counsel, he consented to amending the petition for wardship by striking the allegation, thus preventing a test of the issue.

Even if his failure to prove the accusation untrue were not a mortal blow to his cause, the record does not support the father's contention that DCFS acted "without reasonable cause." At the time it first alleged the father's sexual abuse, DCFS had in its custody a child who had declared in the presence of witnesses, including a police officer,

that she had been regularly abused and recently threatened if she did not continue in the sexual relationship with her father. It is not clear from the record whether the caseworker immediately involved in the case had any knowledge of the girl's retraction in 1978 of a similar accusation. The child's mother, whose deposition later detailed the girl's history of lying, was living in Michigan. DCFS had a potential witness who had contacted the authorities on the girl's behalf because he believed her, although he later questioned the truth of her allegations. The trial court at the hearing for temporary custody found that there was reasonable cause to place the child in the care of the State. Under these circumstances, the DCFS does not appear to have acted unreasonably in going forward with the petition. At the hearing on June 17, 1981, the petition offered to the court no longer alleged sexual abuse. Both parents had consented to its recital that their daughter was neglected and dependent and should be made a ward of the court.

The order assessing the father's attorney fees against DCFS based the award on the single finding that proper investigation would have discovered the child's history of invention. We are aware that the record is replete with accounts of the girl's past untruthfulness and wish to emphasize that we express no opinion as to the truth of her accusations in this instance. However, the father's right to statutory relief depends on proof that the charge was found untrue. There is no finding in the order or in the minute record of this matter that the allegation had been found untrue. In the absence of such a finding, we find that the trial court abused its discretion in awarding attorney fees to the father under section 41. Because of our conviction that the statutory requirements were not satisfied, we do not reach the questions of the reasonableness of the attorney fees or the purposes for which they were incurred.

For the reasons cited above the judgment of the circuit court of Effingham County is reversed.

Reversed.

HARRISON, P.J., and WELCH, J., concur.