ABNER GROVER, Plaintiff-Appellee, *v.* COMMONWEALTH PLAZA
CONDOMINIUM ASSOCIATION *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 78-1943

Opinion filed September 4, 1979.

Paul M. Heller, of Wexler, Wexler & Heller, Ltd., of Chicago, for appellants.

Abner Grover, of Chicago, for appellee, *pro se.*

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Abner Grover, the owner of a condominium unit, brought this contract action against defendants Commonwealth Plaza Condominium Association (the Association), the condominium association of which plaintiff is a member, and its managing agent, Sudler & Company (Sudler). In his action, which was brought pro se, plaintiff sought to recover money he was allegedly caused to expend as a result of defendants' breach of an alleged agreement to install heating units in the sequence of orders placed.

The cause proceeded to a trial before a jury, which rendered a verdict of $30 in favor of plaintiff and against both defendants. In addition, after the jury had retired to deliberate, the trial court, acting on its own motion, assessed a penalty of $70 against defendants under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41) for statements which defendants' attorney had made in procuring a continuance of the trial.

Defendants appeal, contending (1) that the trial court erred in failing to direct a verdict in their favor; (2) that the conduct of the trial court deprived them of a fair trial; (3) that the trial court erred in failing to instruct the jury adequately; and (4) that the trial court erred in making the section 41 award. The following pertinent testimony was adduced at trial.

Because plaintiff was acting in a pro se capacity, the court permitted him to read a brief opening statement and then testify in narrative form, subject to defendants' right to object and to cross-examine. Plaintiff owns a condominium unit in Commonwealth Plaza Condominium, a complex consisting of two high-rise buildings with a total of 370 residential units. The Association is a not-for-profit corporation established to govern affairs relating to the maintenance, repair, administration, and operation of the complex and composed of all condominium unit owners. The

Association's authority is vested in a board of directors (the board), which in turn has since July of 1977 retained a real estate agent, Sudler, to act as managing agent for the property.

Sometime after October of 1976 and before September of 1977, the board became aware of problems relating to the heating and air conditioning systems in the complex, specifically the fan coil units, several of which were in each individual condominium. At a meeting of the board on September 15, 1977, the board was advised of the need to replace most of the fan coil units. After deliberation, the board directed Sudler to procure the manufacture and installation of new heating units for condominium owners who wanted to purchase replacements for their failing units.

On October 7, 1977, Sudler sent a letter to all condominium owners, including plaintiff, informing them that Sudler had received a firm contract proposal for the new heaters from a manufacturer. The letter stated that the fan coil units would be sold to one of three firms in the business of installing such units, who would then sell them to and install them for individual condominium owners. After stating that the first group of 40 units would be ready in six weeks and after spelling out the terms of the sale, the letter concluded:

> "If you wish to order new fan coil units, complete the accompanying form and return it to the management office * * * *at the earliest possible moment. All order will be processed in the order in which they are received. * * *"* (Emphasis supplied.)

The letter was signed by Ted Johnson of Sudler as agents for the Association.

Plaintiff appeared at the management office with his order early the next morning, before the office had even opened, as did one or two other residents of the complex, resulting in plaintiff's order being one of the first two or three orders received. Plaintiff's order requested replacement of three of his four heating units. By letter dated October 24, 1977, Sudler requested a deposit of $100 to confirm previous orders, which deposit was timely made by plaintiff.

Meanwhile, at the board meeting on October 11, 1977, the last meeting plaintiff attended as a member of the board, Sudler's representatives informed the board that the low bidder for installation of the heaters was Thermo-Dynamics, Inc. Plaintiff asked what was included in the price quoted by the installer, but was told that Sudler would send him the specifications. On October 17, plaintiff spoke with Ted Johnson of Sudler, who again said he would send plaintiff the specifications and who affirmed that plaintiff was "in the first batch with failed units." However, unbeknownst to plaintiff, Sudler soon after learned by a letter from Thermo-Dynamics dated October 19, 1977, that Thermo-Dynamics'

bid was contingent on the firm's ability to "provide a work schedule based on a logical sequence of apartments."

Thermo-Dynamics began installing the heaters during the first week of January 1978. By letter dated January 11, 1978, Sudler announced that heaters were being installed first in the nearly 40 apartments in which all heaters had become inoperative, and that installation would continue on a systematic basis. Payments for the heaters would be made to the Commonwealth Plaza Condominium, which would then pay the contractor. The minutes of the next board meeting reflect that heaters were being installed in the order stated in Sudler's letter of January 11, 1978.

Plaintiff thereafter contacted Ted Johnson of Sudler seven times, complaining about the delay in receiving his heaters. He was told that the contractor was proceeding floor-by-floor. Along with all other residents, plaintiff received a letter from Sudler announcing that heaters were being installed on a priority basis, contrary to the contractor's floor-by-floor schedule, only upon payment of an additional $30 charge by the condominium owner, which the letter further stated was authorized by the board.

Plaintiff's heaters were installed at the end of February 1978 on a priority basis, for which he paid $30. Plaintiff was seeking that amount in damages as well as $75 expended to buy electric blankets and an electric heater and approximately $200 for additional electricity allegedly used to power these interim heating devices.

On cross-examination, plaintiff admitted that he purchased the blankets and heater on October 3 and October 11, 1977, respectively, before he knew of or experienced any delay in getting the fan coil units. Plaintiff also testified that the last board meeting he attended was on October 11, 1977, and that he did not ever protest the $30 charge or the decision regarding priority at any subsequent board meeting. However, he stated that he did make informal protests to Sudler's representatives and several board members. Plaintiff then rested.

Defendants' first witness was Gerald Melahn, an officer of Thermo-Dynamics. He stated that a condition of his company's proposal was that installation proceed in a "normal, logical sequence," one floor at a time. The additional $30 charge was for "jumping around" the building. He testified that Sudler and the board agreed to this.

Robert Decker, a board member and immediate past president of the board (until October of 1977), testified next. He stated that Sudler accepted the contractor's proposal on behalf of the Association, but the decisions to allow priority installation for apartments with no heaters functioning and to levy the $30 charge on others seeking priority were made by the board at regularly scheduled meetings; the board directed

Sudler, as its agent, to act accordingly. On cross-examination, he stated that individual condominium owners are allowed to ask questions and participate at board meetings during a certain period of time, but the discussion is not part of the official meeting and is not reported in the minutes. He also testified as to Sudler's authority to "take whatever action is necessary" to remedy problems in the building.

Defendants' final witness was Sudler's representative, Ted Johnson, who further explained the function of Sudler, as managing agent, to execute policies set by the board, rather than dictate policy. He testified that Sudler's letter of October 7, 1977, which he wrote, was not written on any specific command by the board, but as part of Sudler's function of informing residents. At the time of his letter, the board had not yet adopted any policy regarding the processing of orders. Sudler subsequently did play a role in deciding the ultimate order of installation, but the decision to levy the $30 charge for priority of installation was the board's.

Defendants rested their case. The court then asked defendants' attorney the whereabouts of Mr. Bodenstein, who was the current president of the board and who was to be one of defendants' witnesses. Defendants' attorney said that Bodenstein had unexpectedly had to fly to New York. After the court denied defendants' motion for a directed verdict and permitted the jury to retire to deliberate its verdict, the court began to interrogate defendants' attorney concerning a petition and supporting affidavit he had filed pursuant to Supreme Court Rule 231 (Ill. Rev. Stat. 1977, ch. 110A, par. 231), seeking a continuance of the trial, which the court had granted. The petition alleged that Bodenstein was a material witness; that because he had been called out of town, he would be unavailable to testify between August 11 (the date the cause was set for trial) and August 18, 1978; and that plaintiff had been notified and would not suffer any hardship. Accompanying the petition was an affidavit by defendants' counsel averring that he had told Bodenstein the cause was proceeding to trial on August 11 and he should arrange to be available to testify; that Bodenstein had been called out of town on an important business matter and would not be able to testify until August 21 (the day the trial actually began); that if Bodenstein were to testify, he would state the nature and substance of all proceedings and decisions by the board relating to the installation of the units; and that if the matter were continued, Bodenstein would be able to testify.

After the court determined that defendants' attorney had made these statements but had never produced Bodenstein, defendants' attorney explained that he spoke to Bodenstein on the morning of August 21 and Bodenstein planned to return to Chicago from Rockford, Illinois, by 3

p.m. that day. However, defendants' counsel later received a message that Bodenstein had unexpectedly had to fly to New York on business. Defendants' attorney then stated that he had had every intention of calling Bodenstein; he felt that Bodenstein, as current president of the board, would be the best possible witness to present the board's case, and that his case "lacked a certain authenticity" because of Bodenstein's absence. He chose Decker, past president and also a member of the board, to testify instead, but he would not have presented Decker if Bodenstein had been available.

The court learned from plaintiff that plaintiff was self-employed as a consulting engineer, that his fee varies from $25 to $35 per hour, and that he was in court on August 11, ready and willing to go to trial. The court stated it would assess a penalty under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 41) on the ground that defendants' attorney had made certain representations regarding the availability of his witness in procuring a continuance, but "[t]he reason for the continuance was noneffectuated." The court fixed the award at $70, payable to plaintiff for his unnecessary attendance at court on two occasions, July 6 and August 11. Defendants' attorney protested that the court had failed to hold a hearing, but the court was of the opinion that an adequate hearing had been held. Plaintiff then remarked that he saw Bodenstein on the street the following Sunday after August 11, or August 13, when Bodenstein was supposedly out of town. The court noted that that would be part of the record, too.

The jury returned a verdict in favor of plaintiff and against both defendants in the amount of $30. Defendants' post-trial motion was denied, and defendants have appealed from both the judgment on the verdict and the section 41 award.

■■ Defendants' first contention is that the trial court erred in refusing to direct a verdict in their favor. Defendants argue plaintiff failed to prove that Sudler's letter of October 7, 1977, announcing that orders would be processed in the order in which they were received, constituted an agreement between Sudler, as the Association's agent, and the individual condominium owners. Rather, defendants contend the letter was simply a policy announcement on behalf of the board, subject to change at the discretion of the board, and therefore the decision to levy the $30 charge was just an ordinary policy change and not a breach of any pre-existing agreement. However, we cannot agree that this result is clearly evident. The evidence shows that the October 7, 1977, letter was not an announcement of board policy, as the board had no policy at the time. Rather, the jury could find that the letter contained an offer by Sudler, as the Association's agent, to procure the manufacture, sale, and installation

of heating units in the sequence in which orders were received, which offer plaintiff accepted by being one of the first to submit his application and confirmed by submitting his deposit. While the parties have never explicitly raised the questions of offer, acceptance, and consideration, we believe defendant's conduct could be construed as an offer, rather than an invitation to make an offer, and plaintiff's part of the bargain could be viewed as having been performed simply by virtue of his early appearance, in compliance with the terms of the offer. The leading case, dealing with newspaper advertisements, is *Lefkowitz v. Great Minneapolis Surplus Store* (1957), 251 Minn. 188, 86 N.W.2d 689, cited with approval in *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 330, 371 N.E.2d 634. Compare *O'Keefe v. Lee Calan Imports, Inc.* (1970), 128 Ill. App. 2d 410, 413, 262 N.E.2d 758 (distinguishing *Lefkowitz* on the facts).

■ Defendants next contend that plaintiff failed to exhaust his intra-association remedies and therefore could not recover. However, defendants have raised this argument explicitly for the first time on appeal, and therefore it has been waived. Moreover, the record does not support the existence of any such remedies for the type of conduct complained of here.

■■ Sudler also argues that it could not have been liable, as it acted only as agent for the Association. While the general rule is that an agent whose agency is disclosed is not liable on an agreement entered into on behalf of his principal, absent an agreement to that effect, an agent who exceeds his authority or who takes an active part in violating a duty the principal owes to a third person may be held liable. (See, *e.g.*, 1 Ill. L. & Prac. *Agency* §130 (1953), citing *Landau v. Landau* (1951), 409 Ill. 556, 101 N.E.2d 103.) On the evidence, the jury could find that Sudler exceeded its actual (but not apparent) authority in writing the October 7 letter so as to bind its principal to a certain sequence of installation, or that Sudler took an active part in violating the Association's duty to plaintiff. In either event, both agent and principal could be held liable, as occurred here.

We consider next defendants' contention that the trial court committed reversible error in failing to instruct the jury adequately. At the conference on instructions, defendants tendered a burden of proof instruction taken, in revised form, from Illinois Pattern Jury Instructions, Civil, No. 21.02 (2d ed. 1971) (IPI Civil). The pattern instructions contain no instructions specifically applicable to a contract action, so defendants adapted the instruction, which is formulated to apply in negligence cases, as follows:

"The plaintiff has the burden of proving each of the following propositions:

First, that the plaintiff and defendants had entered into a certain contract for the installation of certain heating and air-conditioning units;

Second, that the defendants, jointly or severally, breached the aforesaid contract;

Third, that the plaintiff sustained injuries and damages;

Fourth, that the breach of the contract was the proximate cause of the injuries and damages to the plaintiff.

If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff, but if, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendants."

The trial court refused the instruction as misleading on the ground that plaintiff did receive installation, but not in the order allegedly promised, and therefore the instruction should refer to a contract for a certain sequence of installation. Defendants objected to the refusal of the instruction and protested that the court was obliged to instruct the jury on the existence and nature of plaintiff's burden of proof. The court said it would accept the obligation and give its own instruction. When defendants' attorney expressed a desire to know what the instruction would be, the court outlined it but stated that defendants could object after it had been given.

The only other instructions proffered by defendants, and plaintiff submitted none, were IPI Civil Nos. 1.01 (general cautionary instructions), 2.01 (credibility of witnesses), and 36.01 (no occasion to consider damages if defendants are found not liable). Because the court ultimately did not give a burden of proof instruction, these were all the instructions that were given. Defendants urge that the court committed reversible error in rejecting their burden of proof instruction, agreeing to give one of its own, and then letting the case go to the jury with no burden of proof instruction at all.

We agree. A litigant has a right to have instructions submitted to the jury in accord with the law governing the case. (*Livings v. City of Chicago* (1975), 26 Ill. App. 3d 850, 853, 326 N.E.2d 170.) The instructions should, in a concise and comprehensive manner, inform the jury of the issues presented, the principles of law to be applied, and the necessary facts to be proved to support its verdict. (*Winston v. Chicago Transit Authority* (1971), 2 Ill. App. 3d 151, 156, 276 N.E.2d 65; *Gasperik v. Simons* (1970), 124 Ill. App. 2d 360, 364, 260 N.E.2d 458.) The test is whether, taken as a whole and in series, the instructions are sufficiently clear so as not to mislead and whether they fairly and correctly state the law. (*E.g., Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 344 N.E.2d 583.)

Thus, even if an instruction correctly states the law, if it would mislead the jury, it should not be given. *Ryan v. Fleischman* (1978), 64 Ill. App. 3d 75, 380 N.E.2d 1099.

■■ ■ However, a party cannot complain of the giving or refusal of an instruction unless the challenged matter is made the subject of objection both at the conference on instructions and in the post-trial motion, and all this is made part of the record. (See Ill. Ann. Stat., ch. 110, par. 67, Supplement to Historical and Practice Notes, at 19 (Smith-Hurd supp. 1979), citing, *e.g., Wolfe v. Bertrand Bowling Lanes, Inc.* (1976), 39 Ill. App. 3d 919, 351 N.E.2d 313, and Supreme Court Rule 366(b)(2)(i) (Ill. Rev. Stat. 1977, ch. 110A, par. 366(b)(2)(i))). And even if the court has erroneously refused an instruction and the error has been preserved, reversal for a new trial will not be required unless there has been prejudice. *E.g., First National Bank v. Illinois Central Gulf R.R. Co.* (1978), 62 Ill. App. 3d 36, 378 N.E.2d 1329; *Goodrick v. Bassick Co.* (1978), 58 Ill. App. 3d 447, 374 N.E.2d 1262.

■■■ Applying these principles to the case at bar, we note that the trial court gave no instructions relating to the law of contracts, a subject not covered in the pattern jury instructions, or the law of agency, a subject that is covered (see IPI Civil Nos. 50.01 through 50.10), although the evidence raised substantive issues in these areas. Nevertheless, since defendants failed to offer any such instructions, they cannot and do not complain about the court's failure to give any. Defendants did, however, tender a burden of proof instruction, drawn from an IPI instruction applicable to negligence actions and adapted to the contract action at bar. The court rejected the instruction, not on the grounds that it did not correctly state the law or that the jury did not need to be instructed on the burden of proof, but that it was factually misleading. We agree the trial court should not give instructions that may mislead the jury, but we believe the court committed reversible error in "simply reject[ing] the tendered instruction without any attempt at modification or alteration." (*Balestri v. Highway City Transportation, Inc.* (1978), 57 Ill. App. 3d 669, 675, 373 N.E.2d 689, *aff'd sub nom. Balestri v. Terminal Freight Cooperative Association* (1979), 76 Ill. 2d 451, 394 N.E.2d 391 (involving a non-IPI instruction).) Moreover, while a court ordinarily has no duty to give instructions on its own motion (*City of Chicago v. Baird* (1971), 132 Ill. App. 2d 644, 650, 270 N.E.2d 259, *aff'd* (1972), 52 Ill. 2d 512, 288 N.E.2d 110), having once agreed to give such an instruction, the court was bound to do so. Defendants might well have forborne from tendering a revised instruction, which could easily have been accomplished by the addition of a very few words. (*Cf. Department of Public Works and Buildings v. Association of Franciscan Fathers* (1977), 69 Ill. 2d 308, 319, 371 N.E.2d 616.) As it was, the case went to the jury not only with no

instructions as to the substantive law applicable to the case, but with no instructions as to the issues in the case or the party who bore the burden of proof on those issues. The jury might have reached its verdict in the belief that defendants had to prove the nonexistence of a contract, or on some other basis altogether. Whether or not the jury reached a defensible result, we believe defendants were entitled, in this small but close case, to a trial before a properly instructed jury. See *Ryan v. Fleischman* (1978), 64 Ill. App. 3d 75, 380 N.E.2d 1099.

Neither does the fact that defendants' attorney essentially recited his refused instruction, without objection, during closing argument, require a different result. Having just been warned that they need not accept the parties' closing arguments as fact, the members of the jury would not be likely to embrace and apply defendants' burden of proof argument as fully as if it had come from "on high," as it would if the court had given defendants' instruction or one of its own. In failing to do so, the court committed error that operated to the prejudice of defendants; the error having been properly preserved for review by virtue of defendants' objections at the conference on instructions and in their post-trial motion, reversal for a new trial is required. Compare *Robertson v. Smith* (1976), 40 Ill. App. 3d 174, 351 N.E.2d 576 (reversal not required for refusal of a tendered instruction on proximate cause where both parties argued it and the jury could not have been confused).

At this point we would distinguish our decision in *Board of Education v. Del Bianco & Associates, Inc.* (1978), 57 Ill. App. 3d 302, 372 N.E.2d 953. In that case, we held it was proper in a contract action for the court to refuse a duty of care instruction extracted from the negligence section of the pattern jury instructions. However, the refusal was proper because the defendant was charged with breach of contract, the negligence instruction had not been adapted to a contract situation, and the jury was properly instructed on the elements of a breach of contract action, unlike the present case. See also *Geving v. Fitzpatrick* (1978), 56 Ill. App. 3d 206, 212, 371 N.E.2d 1228 (instructions on elements of breach of contract action were properly given). Compare *Michalowski v. Richter Spring Corp.* (1969), 112 Ill. App. 2d 451, 251 N.E.2d 299 (refusal in contract action of tendered instruction that plaintiff had the burden of proving performance of an act was not error where the contract did not require performance of that act), and *Stephenson v. Air Products & Chemicals, Inc.* (1969), 114 Ill. App. 2d 124, 136, 252 N.E.2d 366 (court did not err in refusing to give a burden of proof instruction that was defective in failing to cover all the issues, in view of the fact that another instruction adequately covered the burden of proof issue).

■■ Because they may arise on retrial, we will consider other supposed errors by the trial court. Defendants complain that the court committed

conduct which deprived them of a fair trial. This alleged conduct consisted of the court's making and sustaining relevance objections on plaintiff's behalf, and "castigating" defendants' attorney for persisting in questioning in the forbidden areas. In *Foerster v. Illinois Bell Telephone Co.* (1974), 20 Ill. App. 3d 656, 315 N.E.2d 63, the defendant similarly claimed that the court had erred in closely monitoring and interrupting the testimony of defense witnesses. On appeal the court held that the trial court was only seeking to determine the materiality and relevance of the testimony sought to be elicited, and therefore there was no error. (20 Ill. App. 3d 656, 664-66, 315 N.E.2d 63.) The *Foerster* court also found that the trial court had not become an advocate by its statements or actions. (20 Ill. App. 3d 656, 666, 315 N.E.2d 63.) The same type of conduct complained of in *Foerster* is advanced here, and we find that the principles set forth in that case are applicable in the case at bar. The relevance objections were properly sustained and, though made by the court, were balanced by the court's sustaining of many of defendants' relevance objections. We would also note that although the court gave some consideration to plaintiff's pro se status, defendants were not denied a fair trial by any action of the court in this regard.

Finally, we consider the propriety of the court's assessment of an award against defendants under section 41 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 41.) That section provides in relevant part:

"Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal."

An amendment by the legislature (Pub. Act 79-1434, §8, eff. Sept. 19, 1976), removed the former requirement that the statements also have been made "not in good faith." (See also *In re Application of County Collector* (1978), 66 Ill. App. 3d 437, 449-50, 383 N.E.2d 1224.) Although many cases appearing after the effective date of the amendment continue to refer to the "not in good faith" requirement, the operative facts of all those cases took place while the former section 41 was still in force. (See *Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 383 N.E.2d 185; *Brandenberry Park East Apartments v. Zale* (1978), 63 Ill. App. 3d 253, 379 N.E.2d 674; *Farwell Construction Co. v. Ticktin* (1978), 59 Ill. App. 3d 954, 376 N.E.2d 621; *Williams v. City of Chicago* (1977), 54 Ill. App. 3d 974, 370 N.E.2d 119.) As to fact situations arising after the effective date of the amendment, if the amendment is to have any effect, the only requirements must be that the statements be made without reasonable cause and be found to be untrue. (See *Medical Modalities Associates, Inc.*

*v. Quick* (1978), 65 Ill. App. 3d 300, 304, 382 N.E.2d 620 (also involving a motion under section 57(5) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57(5)), which prescribes penalties for affidavits made in bad faith when presented in support of a summary judgment motion, and thus the court also discusses bad faith).) Because section 41 is penal in nature, it can be invoked only in cases falling strictly within its terms and each of the section's formerly three, now two requirements must be proved. *E.g., Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 366, 383 N.E.2d 185.

We therefore consider whether this is a case falling strictly within the terms of the section and whether the requirements of the section, that the statements be made without reasonable cause and be found to be untrue, have been proved. The manner in which the requirements may be proved has been the subject of varying interpretations. Some cases have held that a hearing as to the merits and the amount of the award must be conducted. (*E.g., Malone v. Checker Taxi Co.* (1972), 3 Ill. App. 3d 1040, 279 N.E.2d 738; accord, *In re Application of County Collector* (1978), 66 Ill. App. 3d 437, 450, 383 N.E.2d 1224; *Morton v. Environmental Land Systems, Ltd.* (1977), 55 Ill. App. 3d 369, 374, 370 N.E.2d 1106.) Others have held that section 41 petitions could be granted (*Brokaw Hospital v. Circuit Court* (1972), 52 Ill. 2d 182, 287 N.E.2d 472) or denied (*e.g., Sarelas v. Alexander* (1971), 132 Ill. App. 2d 380, 270 N.E.2d 558) without a hearing, where the pleadings or the evidence adduced at trial demonstrated the falsity or truth of the statements complained of, or where a hearing would have required a virtual retrial of all the issues in the case. (*Voss v. Lakefront Realty Corp.* (1977), 48 Ill. App. 3d 56, 72, 365 N.E.2d 347.) Another case has emphasized the use of the word "summarily" with regard to the trial court's power to tax fees under the section, in response to a petitioner's claim that a hearing should have been held. (*Village of Evergreen Park v. Spangler* (1976), 40 Ill. App. 3d 947, 353 N.E.2d 257.) Thus, the necessity for a hearing, of what type, has been said to vary with the circumstances surrounding the motion. (*Voss v. Lakefront Realty Co.*) Finally, our courts have approved the trial court's invocation and award of fees under section 41 on its own motion. *Brokaw Hospital v. Circuit Court; Fenocchi v. Morrison* (1972), 7 Ill. App. 3d 577, 288 N.E.2d 130.

■■ Perhaps the best statement of the rule, is that a hearing is dictated where one is necessary to determine whether the requirements of section 41, that the statements be made without reasonable cause and be found to have been untrue, have been met. If those requirements can be proved or rebutted from the pleadings, trial evidence, or other matter appearing in the record, perhaps then no hearing on the merits is needed or should be required. But in the instant case, without holding a hearing, we do not see

how the trial court could have found that defendants' attorney's representations as to the unavailability of his witness were untrue and made without reasonable cause. Although the witness never did appear, despite defendants' attorney's assertion to the contrary, the truth and the reasonableness of the attorney's statements must be determined by information available to or discoverable by him at the time he made the statements, not at the time of trial. (See *Couri v. Home Insurance Co.* (1977), 53 Ill. App. 3d 593, 601, 368 N.E.2d 1029.) When defendants' attorney requested the continuance, his representations that his witness had suddenly been called out of town and therefore could not appear may very well have been true, based on the information available to him at the time. Quite simply, the witness may have told him just that, as defendants' attorney claimed. Without inquiring of the witness as to whether he did, in fact, tell defendants' attorney he was leaving town but would be available the following week, the reasonable cause for and truthfulness of defendants' attorney's statements to that effect could not be gauged. A hearing was therefore necessary, as the section 41 requirements were not and could not have been established without one. See *Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 366-67, 383 N.E.2d 185.

In any event, a hearing should have been held as to the actual expenses incurred by plaintiff due to the use of allegedly false statements to procure a continuance; even those cases which have emphasized the summary nature of the trial court's power under section 41 have noted the need for a hearing on the fees and expenses to be awarded. See *Village of Evergreen Park v. Spangler* (1976), 40 Ill. App. 3d 947, 353 N.E.2d 257.

The judgment on the verdict and the section 41 award are reversed and remanded for a new trial and for a hearing as to the applicability of section 41.

Reversed and remanded with directions.

DOWNING and PERLIN, JJ., concur.