CAN AM INDUSTRIES, INC., an Illinois Corporation, Plaintiff,

v.

The FIRESTONE TIRE & RUBBER COMPANY, an Ohio Corporation, Defendant.

No. 85–3453.

United States District Court, C.D. Illinois, Springfield Division.

March 26, 1986.

Andrew C. Schnack III, Quincy, Ill., for plaintiff.

Frances E. Prell, Clifford L. Weaver, Chicago, Ill., Patrick Reilly, Springfield, Ill., for defendant.

## OPINION ORDER

MILLS, District Judge:

Easement.

Injunction.

This case involves Can Am's baseless refusal to allow Firestone to use an easement that ran across Can Am's land.

Can Am acquired a state TRO, which we obviated by our own TRO and permanent injunction.

Can Am argued that they were afraid that Firestone would dig up, remove, and subsequently scatter hazardous waste, thus causing injury to Can Am when the waste was scattered around.

We found earlier that Can Am's fears were absolutely without merit, as Firestone was refurbishing the site, not tearing it up, and that there was no merit to Can Am's arguments, as Can Am was "shaking down" Firestone for $25,000, which was the price Firestone would have had to pay to get access. Can Am several times violated its own state court TRO by denying any access whatsoever to the site, and violated our orders by refusing further access to the site.

Also, to exacerbate the situation, Can Am in its latest pleading attempts to bolster its argument that it feared removal of wastes by Firestone, by submitting an undated newspaper article purportedly published in August or early September which listed the site as dangerous and ripe for official action. Firestone supplied us with the same article, taken from the same newspaper, dated October 2, 1985, a month *after* the TRO's were entered and approximately 2 weeks *after* our permanent injunction.

## I BACKGROUND

On September 10, 1985, Plaintiff Can Am obtained, in the Illinois Circuit Court of Adams County, a temporary restraining order prohibiting Firestone from using an easement it owned, that crossed Can Am's property. Firestone was going to use the easement order to reach a chemical dump site that Firestone owned and was going to repair.

On September 11, 1985, this Court granted Firestone's removal motion, based on diversity, and issued a TRO for Firestone, that superseded the state TRO, thus allowing Firestone access to its property. We

granted a permanent injunction in favor of Firestone on September 18, 1985.

Now Firestone is moving for the damages it incurred in having to postpone preconstruction meetings on the site and construction itself, as well as all costs and fees incurred in securing their right to use their easement.

The law and facts side with Firestone, though they ask for a bit too much.

## II ANALYSIS

Firestone seeks actual and punitive damages, based on Illinois common law; costs and damages allowed by Fed.R.Civ.P. 65(c) and 65.1, as a result of the damage suffered because of "improvidently issued" TRO in the state court; sanctions and damages under Fed.R.Civ.P. 11, 28 U.S.C. § 1927, and Ill.Rev.Stat., ch. 110, § 2–611, for Firestone having to defend "against Can Am's false and fraudulent allegations."

### (a) Facts

The period of time that is covered is from August 22, 1985 (when Can Am notified Firestone of its intent to charge a $25,000 fee for use of its easement) until September 25, 1985, when Firestone was able to begin work on its site. The amount of money involved is:

| | | |
|---|---|---|
| 1. Contractor's fee for false starts | = | $13,052.53 |
| 2. Witness fees associated with court appearances | = | 7,411.74 |
| 3. Attorney's fees | = | 36,667.07 |

The contractor's fees came about because planners, workers, and equipment arrived on the site to begin work, on several occasions, but were denied access to the site by Can Am, once on September 11, 1985, then two other false starts, but which occurred after we ordered temporary and permanent injunctions.

### (b) Law

(1) Can Am demands a hearing in their memo of November 14, 1985. They cite *Grover v. Commonwealth Plaza Condominium*, 76 Ill.App.3d 500, 31 Ill.Dec. 896, 394 N.E.2d 1273 (1st Dist.1979), as "requiring" a hearing under 110 I.R.S. § 2–611.

■ This case does not require a hearing. *Grover*, 76 Ill.App.3d at 512, 31 Ill. Dec. 896, 394 N.E.2d 1273, states:

A hearing is dictated when one is necessary to determine whether the requirements of [the] section . . . , that the statements be made without reasonable cause and be found to have been untrue, have been met. If those requirements can be proved or rebutted from the pleadings, trial evidence, or other matter appearing in the record, perhaps then no hearing on the merits is needed or should be required.

Thus, no hearing on the sanctions motions is called for, for reasons that below become evident.

■ We found at the hearing in September (as reflected in our orders) that there was no basis for the state TRO or Can Am's refusals to allow access. From the hearings already held and the pleadings, it appears that the demand for $25,000 belies any safety concerns, and subsequent untrue filings—such as the bogus newspaper article—further indicate bad faith, all of which supports sanctions.

### (2) 110 Ill.Rev.Stat. ¶ 2–611

Firestone cites 110 Ill.Rev.Stat. ¶ 2–611 which states:

Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the *payment of reasonable expenses, actually incurred* by the other party by reason of the untrue pleading, together with a *reasonable attorney's fee*, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal. (Emphasis ours.)

Section 2–611 sanctions are proper where the moving party demonstrates that his opponent "has abused the right of free access to the courts by pleading untrue statements of fact which he knew or reasonably should have known were untrue. [cite omitted.]" *Dayan v. McDonald's Corp.*, 126

Ill.App.3d 11, 16, 81 Ill.Dec. 143, 466 N.E.2d 945 (1st Dist.1984); *Great Western Sugar Co. v. White Stokes Co.*, 736 F.2d 428, 431–32 (7th Cir.1984). This section allowed the court in *Dayan* to award all of the fees and expenses incurred in preparation for trial, because the false pleadings were the cornerstone of that case. *Id.*, 126 Ill.App. at 24, 81 Ill.Dec. 143, 466 N.E.2d 945. Thus, all expenses incurred in the court proceedings could properly be charged to Can Am, if the court proceedings were falsely commenced.

The untrue allegations and statements revolve around Can Am's alleged fears that Firestone was going to dig up hazardous waste and track that waste (via truck and tractor tires, as well as dust) across Can Am's property. Firestone alleges that Can Am either knew or should have known that this was not going to happen, or Can Am exercised a careless disregard for the truth in asserting that Firestone's project was a removal operation, when they should have known that the project was intended to shore-up the river bank and otherwise stabilize the area.

Another factor belying Can Am's fear of hazardous material removal is the fact that they only sought to prohibit Firestone's activities as long as they refused to pay a $25,000 fee. Had Firestone paid the fee, Can Am would have allowed access to the site. Thus, it appears that financial—not safety—reasons were Can Am's paramount concerns.

Moreover, in Can Am's response to Firestone's present motion, Can Am seeks to reassert that their belief in the hazardousness of the project was real. In their memo they state that at the time the Adams County TRO was sought, Can Am had just learned, from a newspaper article of a purported clean-up project to be commenced by the Illinois EPA on this site. The exhibit is indeed an enlarged xerox copy of a newspaper article on this subject; however, no dates appear on the article. Firestone has replied to Can Am's response, which includes a less enlarged xerox copy of the same exact article. The date is shown to be October 2, 1985, almost a month after the entry of the Adams County TRO, and a couple of weeks *after* our permanent injunction. There is absolutely no way Can Am could have relied on or could have been frightened by this article at the time they allege because it was published a month after they were alleged to have been frightened into seeking the Adams County TRO.

Can Am emphasizes the hazardous nature of the site, but as Firestone points out (and Can Am admits) when Firestone sold the property to Can Am (and acquired the unrestricted general easement) there was full disclosure as to the site's hazardous deposits to which Can Am only objects when Firestone refuses to pay the $25,000 fee for use of the easement, years later.

■ Thus, Firestone is entitled to damages under § 2–611, as Can Am's initial activity seems duplicitous (they were really only interested in the fee and raised the specter of hazardous waste to secure that fee). Moreover, not only initially but down to the present, Can Am goes beyond the truth to succeed before this Court. This in itself is grounds for sanctions.

### (2) Punitive Damages

Firestone also seeks unspecified punitive damages for Can Am's allegedly intentional interference with the easement. Under Illinois case law, punitive damages would be proper. *Leclerq v. Zaia*, 28 Ill.App.3d 738, 742–43, 328 N.E.2d 910 (3d Dist.1975). This case involved almost the same situation as in the case at bar. The servient estate owner blocked the dominant estate's easement. The Appellate Court upheld an injunction in favor of the dominant estate as well as $1.00 in nominal damages and $500 in punitive damages.

■ All of these damages are appropriate in light of the finding in our permanent injunction order, which states, "the Court finds that ... Can Am's alleged concern about removal of hazardous waste ... is without any foundation in fact ..." Moreover, we found that the project was going

to stabilize the area to reduce its hazardousness.

### (3) Firestone's Motion Under Fed.R.Civ.P. 65 and 65.1

■ This motion is for damages caused as a result of the wrongfully entered Adams County TRO. Such damages are allowed only to the extent of the bond filed by the Plaintiff. *Coyne-Delaney v. Capitol Dev. Bd. of Ill.*, 717 F.2d 385, 391–92 (7th Cir.1983), relying on *Adolf Coors Co. v. A & S Wholesalers, Inc.*, 561 F.2d 807, 813 (10th Cir.1977), which stated: "The general rule is that absent proof of malice in obtaining injunctive relief, a party cannot be liable in damages resulting from a wrongfully or erroneously granted injunction beyond the limits or maximum amount of the bond ..." Moreover, "[i]n deciding whether to withhold the bond for costs or injunction damages, the district court [is] to be guided by the implicit presumption in Rules 54(d) and 65(c) in favor of awarding [damages and costs]." The district court is also to take into account "objective factors—such as the resources of the parties, the defendant's efforts or lack thereof to mitigate his damages, and the outcome of the underlying suit ..." *Coyne-Delaney*, 717 F.2d at 392.

■ Without considering any bad faith, the above analysis would allow the awarding of the bond to Firestone because: (1) Can Am has the resources, and has already posted the bond; (2) Firestone began to mitigate by immediately seeking to remove the TRO (though Can Am strenuously argues the opposite point); (3) the outcome of the underlying suit was overwhelmingly in favor of Firestone.

Without a showing of malice or bad faith damages for a wrongfully entered injunction pursuant to Rules 65 and 65.1, we are limited by the bond, which in this case is $10,000, and seems proper. As noted above there is malice or bad faith present here, but that can be adequately covered by other authority and citations raised by Plaintiff.

### (4) Sanctions Under Rule 11 and 28 U.S.C. § 1927.

■ There is only one test required for allowing sanctions under Rule 11 and that is that there be a showing "of subjective bad faith" on the part of the party to be sanctioned. *Badillo v. Central Steel & Wire Co.*, 717 F.2d 1160, 1165 (7th Cir. 1983).

"There are two prerequisites for imposition of fees under 28 U.S.C. § 1927: (1) the actions by the attorney must multiply the proceedings; and (2) these actions must be vexatious and unreasonable. [cite omitted.] This second component of liability under § 1927 requires subjective bad faith by the attorney. [cite omitted.]" *Suslick v. Rothschild Securities Corp.*, 741 F.2d 1000, 1006 (7th Cir.1984).

■ Firestone makes a good case for subjective bad faith initially, and much later, as we have seen. But also on the date when the Adams County TRO was entered, Can Am's attorney made no attempt to notify Firestone of the TRO. Firestone only learned of it on the day a pre-construction planning meeting was scheduled to be held on the property in question, and Can Am forestalled the meeting pursuant to the Adams County TRO. Moreover, Can Am also denied Firestone access to the site on September 18, 1985, after we entered our TRO on September 11, 1985, which allowed access to the property by construction workers and equipment at noon on September 18, 1985.

Even if this does not exhibit subjective bad faith, the fact that Can Am was only interested in the $25,000 access fee, and the subsequent filing of the newspaper article which was alleged to have been published a month before it was actually published, clearly show subjective bad faith.

### III ATTORNEY'S FEES AND COSTS

Firestone has cited numerous authorities in support of their request for overall damages, which include attorney's fees which are substantial—$36,667.07. (Firestone's

attorneys charge about $120 to $150 per hour.)

Firestone's fees are part of the general damages. equation it sets forth. Thus, their cites for damages under all the above authorities are to be read as authority for their attorney's fees. In the absence of a statute, the authorities do not allow attorney's fees unless there is subjective bad faith and a lack of probable cause to make the claim or motion involved. *Badillo v. Central Steel & Wire Co.*, 717 F.2d at 1165; *Coyle-Delaney v. Capitol Development Board*, 717 F.2d at 390.

■ The Court finds that there *was* subjective bad faith and a lack of probable cause. The Court finds that attorney's fees are proper as § 1927 requires "vexacious and unreasonable" "multiplying of proceedings," *Suslick*, 741 F.2d at 1006, which necessarily means that there was a lack of probable cause to "multiply the proceedings."

Can Am argues that it was not they who multiplied these proceedings, rather it was Firestone. This argument is based on a letter from Can Am's attorney to Firestone dated 9/12/83 which attempts to settle the situation (due to "Judge Mills's [sic] rather stern requests") after our TRO hearing on 9/11/85. The letter would allow access across the easement, along with some conditions that it be repaired and that an indemnity agreement be entered into. Can Am alleges that the whole affair could have ended then and there, that there was no reason for the permanent injunction and hearing on 9/18/85 and that (essentially) it is Firestone's fault for there having to be a permanent injunction and hearing—thus, they vexaciously multiplied the proceedings.

This argument is specious at best. The letter was a direct result of our having entered the TRO on 9/11/85 that cancelled the state TRO of 9/10/85. Moreover, the permanent injunction hearing date of 9/18/85 was set by the Court, not Firestone.

Firestone was well within their rights to ignore Can Am's conciliatory, though rather obdurate, letter of 9/12/85 because of Can Am's previous wrongful behavior, *e.g.* (1) the bold denial of use of the easement unless a $25,000 security access fee was paid; (2) Can Am's less than expeditious service of the state TRO—and evasive tactics on the day of its entry; (3) Can Am's absolute denial of the easement for the preconstruction meeting; and (4) other various denials of access. Also, why should Firestone enter into any agreement with a party that had shown itself to be duplicitous, when it can achieve the same results (without duplicity) from the Court? Subsequent events have shown that Firestone's actions were appropriate, because Can Am's duplicitous nature continued to reappear after September 12. For example, our TRO allowed Firestone to begin construction on September 18, 1985, at noon. At that time Firestone's construction crews arrived but were turned away by Can Am in direct violation of our court order, and as mentioned above, Can Am has seen fit to exercise a little mendacity on the Court, through its specious filing of the undated newspaper article.

Can Am has acted vexaciously and unreasonably to multiply the proceedings in this case. Firestone acted reasonably in the only way it could under the circumstances. Thus, their motion for sanctions and expenses is allowed.

## IV CAN AM'S RESPONSE

### (a) Lack of Mitigation

Can Am hopes to show that no mitigation has taken place, but rather that Firestone is aggravating the situation by claiming that they began suffering damages on the day that the Adams County TRO was entered on 9/10/85. Can Am does this by alleging that the construction company hired to do the work did not receive notice that its bid had been accepted until a day before the state TRO on 9/9/85. (Can Am acquires its information from exhibits and tables provided by Firestone in its "memo in support of … damages …"). Thus,

argues Can Am, the damage suffered cannot be real, because there is no way a construction company can be hired and begin work within one day. Moreover, Firestone is alleged to have contributed to the late start-up because on August 30, 1985, Firestone notified its "consultants" to hold off notifying the construction company of its winning the bid, "until its site access problems had been resolved." Can Am is suggesting that Firestone foresaw access problems to the site and aggravated the problem by holding off accepting the construction contract until September. This, says Can Am, is not mitigation.

Firestone points out this delay makes prudent business sense, since Firestone learned on August 22, 1985, that Can Am was going to deny Firestone access to its site unless it paid the $25,000 access fee to use the easement. (Firestone's memo in support of a preliminary injunction.) Thus, Firestone was not going to commit itself until it could attain access to the site on a certain date for construction purposes, yet it had to commit before too late in the construction season. Thus, Firestone's explanation for committing itself to its construction company is reasonable. After all, Firestone did not know that Can Am would seek an injunction at that time.

Can Am then argues that the preconstruction meeting that was thwarted by Can Am's refusal to allow passage across the easement by planners, on September 10, 1985, is another case of exacerbating damages, in that Firestone should have known that they would be denied access to the site, yet they persisted in attempting to hold the meeting.

Firestone counters that the meeting had been scheduled for awhile (after all, their personnel did have access before, due to the general easement) but they unofficially learned of the state court's TRO the night before (by use of their own diligence—Can Am's attorneys allegedly could not be found by Firestone on the day the TRO was entered). Thus, it was too late to call off the meeting of people who were coming from various locations and were already in transit. Moreover, Can Am's complete denial of access to the site, for a preconstruction meeting, not only violated the general easement, but also violated their state TRO because the state court TRO did not expressly preclude normal use of the easement, only construction and hazardous waste traffic were banned. Thus, Can Am knowingly violated its duties under the easement, and also its own TRO acquired by them for their benefit.

Furthermore, Firestone's attempt at going ahead with a preconstruction meeting on the site during the pendency of the state TRO is seen as an attempted mitigating factor in that even though they could do no work at the time, plans could be made and the site surveyed, etc., prior to actual construction. Can Am's TRO did not prohibit normal access and all Can Am really wanted was $25,000; so Firestone knew that they would be doing the construction, because either the TRO would be dissolved or they would pay the $25,000 entrance fee.

█ Therefore, Firestone did nothing to aggravate its damages during the pendency of the state TRO, rather it tried to mitigate its damages but were thwarted by Can Am's obstructionist tactics.

### (b) Construction Work Damages During Our TRO

Can Am complains that some $5,164.53 in consulting fees for the time period around October 11, 1985, are not sufficiently specific to warrant damages. Firestone makes no specific reply. Its "Woodward-Clyde consultants" letter and tables state that these costs are "associated strictly with delays beyond our control," and are listed as staff engineering and secretarial work.

█ Can Am is correct. There is a lack of explanation as to how these costs are due to the delay and not just normal consultant work.

Thus, this portion of the damages is denied.

█ There are, however, bills and work sheets from the construction companies

that itemize reasons for increased costs, which for the most part deal with problems relating to cold weather, the "false mobilizations," and the expense of having to come to this court on September 18, 1985, for the hearing and explain what it is that they were going to be doing.

*Ergo,* it is hereby ORDERED, for the foregoing reasons, that Firestone's motion for sanctions under Ill.Rev.Stat., ch. 110, ¶ 2–611, Fed.R.Civ.P. 11, 65, 65.1, and 28 U.S.C. § 1927, is ALLOWED in part.

It is ORDERED that Firestone be awarded all of its claimed damages, fees, and expenses as follows:

1. Contractor's fees for delays and false starts ............. $13,052.53
   Less $5,164.53 for which there is inadequate explanation ........ 5,164.53
   Allowed $ 7,888.00
2. Witness fees allowed 7,411.74
3. Attorney's expenses (including paralegal) allowed 2,779.77
4. Attorney's fees—272.10 hours @ $100 27,210.00
   Total Compensatory $45,289.51

Furthermore, punitive damages are awarded in the amount of $5,000.00.